UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| MAC HUDSON and <br> EVANS AUGUSTE, <br><br> Plaintiffs, <br><br> v. <br><br> DUANE MACEACHERN, <br> SCOTT ANDERSON, KEITH NANO, <br> TIMOTHY BARIAMIS, and <br> CHRISTINE BROCKELMAN <br><br> Defendants. | ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) | Civil Action No. 13-12395-LTS |

ORDER ON DEFENDANTS' MOTION TO DISMISS

March 30, 2015

SOROKIN, J.

Plaintiffs Mac Hudson and Evans Auguste,[1] both in the custody of the Massachusetts Department of Corrections, bring this pro se action against several officials of the Massachusetts Correctional Institution at Shirley ("MCI-Shirley"). Plaintiffs claim that they were targeted for retaliation by Defendants for their activities grieving certain actions taken by Defendants as well as for assisting other prisoners in grieving those actions. Plaintiffs have brought several constitutional claims as well as other federal and state law claims. Defendants have moved to dismiss the Complaint, arguing that it fails to state a claim and, as to two Defendants, that proper service has not been effected. For the reasons that follow, Defendants' Motion to Dismiss is ALLOWED IN PART and DENIED IN PART.

---

[1] The exact name of this plaintiff is not entirely clear. In many places in the Complaint, he is referred to as August Evans. His signature on the Complaint, however, reads Evans Auguste. The Court will refer to this plaintiff as his name appears in his signature.

I.    FACTS

The following facts are drawn from the Complaint and accepted as true for the purpose of resolving the Motion to Dismiss.

Plaintiffs were involved with a program called "Bridging the Gap." Doc. No. 1 at ¶¶ 17-21. Auguste, among others, had petitioned prison administrators to seek approval for the program, which, it is alleged, was granted. Id. ¶¶ 17-18. After Hudson was transferred to MCI-Shirley in August 2010, he became active in the group as "chairman" of the program. Id. ¶¶ 20-21. In that role, Hudson submitted an informal grievance and otherwise complained to the administration, including Defendant MacEachern, about the delay in approving certain proposals submitted by the group. Id. ¶¶ 21-23. Sometime after those complaints, Bridging the Gap was discontinued as a program by Defendant Anderson. Id. ¶ 26. In response to the administration's actions, Hudson advised members of the group who were upset by the actions that they should submit individual grievances to the administration to seek redress. Id. ¶ 28. Auguste assisted group members who were unfamiliar with the grievance process in submitting grievances regarding the discontinuance of Bridging the Gap. Id. ¶ 29.

The administration, in the person of Defendant Bariamis, the Institutional Grievance Officer, received a large number of grievances related to the discontinuance of the Bridging the Gap program. Id. ¶ 30. Defendant Bariamis notified Defendant Anderson of the volume of grievances he had received, and Anderson ordered an investigation into the grievance activity. Id. Thereafter, corrections officers, including Defendant Nano, interviewed several of the inmates who had submitted grievances. Id. ¶¶ 31-32. Hudson and Auguste eventually were identified for the assistance they provided to prisoners in filing grievances. Id. ¶¶ 32, 36. Both

Hudson and Auguste were placed in the Special Management Unit within MCI-Shirley while the investigation continued.  Id. ¶¶ 34, 36.

The investigation resulted in disciplinary reports for both Hudson and Auguste, alleging that they had pressured other inmates to file grievances.  Id. ¶ 38.  Hudson and Auguste allege that the reports of pressuring other inmates were fabricated by Defendant Nano.  Id.  They claim that the investigation into the allegations in the disciplinary reports was either inadequate or non-existent, and that the disciplinary reports were intended to alter Plaintiffs' classification such that they would be subject to more restrictive conditions of confinement.  Id. ¶¶ 39-40.  Both Plaintiffs were found guilty of disciplinary offenses and their appeals were denied.  Id. ¶¶ 39, 41.  Internal grievances they submitted relating to the investigation and disciplinary reports were also denied.  Id. ¶ 41.

Plaintiffs claim that Defendants, by threats and intimidation, conspired to deny the group members of the benefit of the Bridging the Gap program and further conspired to prevent Plaintiffs from filing their own grievances as well as assisting other inmates in submitting grievances.  Id. ¶ 42.  Plaintiffs further argue that Defendants retaliated against Plaintiffs in violation of the First Amendment to the United States Constitution for filing grievances and assisting others in submitting grievances, and that Plaintiffs were denied due process by the investigation and disciplinary procedures that followed the grievance activity.  Id. ¶¶ 43, 45.

II. LEGAL STANDARD

To survive a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)).  The Court "must take the allegations in the

complaint as true and must make all reasonable inferences in favor of the plaintiff[]." Watterson v. Page, 987 F.2d 1, 3 (1st Cir. 1993). "[F]actual allegations" must be separated from "conclusory statements in order to analyze whether the former, if taken as true, set forth a plausible, not merely a conceivable, case for relief." Juarez v. Select Portfolio Servicing, Inc., 708 F.3d 269, 276 (1st Cir. 2013) (internal quotations omitted). This highly deferential standard of review "does not mean, however, that a court must (or should) accept every allegation made by the complainant, no matter how conclusory or generalized." United States v. AVX Corp., 962 F.2d 108, 115 (1st Cir. 1992). Dismissal for failure to state a claim is appropriate when the pleadings fail to set forth "factual allegations, either direct or inferential, respecting each material element necessary to sustain recovery under some actionable legal theory." Centro Medico del Turabo, Inc. v. Feliciano de Melecio, 406 F.3d 1, 6 (1st Cir. 2005) (quoting Berner v. Delahanty, 129 F.3d 20, 25 (1st Cir. 1997)).

III. DISCUSSION

Defendants have moved to dismiss the Complaint on the basis that Hudson is barred from bringing the claims contained in the Complaint under the doctrine of res judicata due to his previous litigation of related issues in Massachusetts state court. Defendants also argue that the Complaint independently fails to state a claim and that Plaintiffs failed to serve two Defendants.

A. Res Judicata

Defendants argue that Hudson is precluded from raising the claims presented in the Complaint due to the doctrine of res judicata, also known as claim preclusion, arising from his prior litigation of related issues in state court. Although res judicata is an affirmative defense that must be plead and proved by Defendants, SBT Holdings, LLC v. Town Of Westminster, 547 F.3d 28, 36 (1st Cir. 2008), in certain circumstances the Court may address res judicata in

4

resolving a motion to dismiss. For res judicata to be ripe at this stage, two requirements must be satisfied. First, "the facts that establish the defense must be definitively ascertainable from the allegations of the complaint, the documents (if any) incorporated therein, matters of public record, and other matters of which the court may take judicial notice." In re Colonial Mortgage Bankers Corp., 324 F.3d 12, 16 (1st Cir. 2003). Second, "the facts so gleaned must conclusively establish the affirmative defense." Id.; see also Rodi v. S. New Eng. Sch. of Law, 389 F.3d 5, 12 (1st Cir. 2004).

Here, the facts implicating res judicata are not contained within the Complaint, rather they are contained within state court documents brought to the Court's attention by Defendants. Defendants attached to their Motion to Dismiss a complaint filed in Middlesex County Superior Court by Hudson, as well as a memorandum and order dismissing that case on the defendants' motion for judgment on the pleadings. Doc. Nos. 21-1, 21-2. Documents from prior state court adjudications are matters of public record and, as such, are appropriate for consideration on a motion to dismiss. See Giragosian v. Ryan, 547 F.3d 59, 66 (1st Cir. 2008); In re Colonial Mortgage Bankers Corp., 324 F.3d at 19.

Turning to the merits of the res judicata issue, "[w]hen a federal court considers the preclusive effect of an earlier state court judgment, it must apply that state's preclusion principles." Goldstein v. Galvin, 719 F.3d 16, 22 (1st Cir. 2013); see Migra v. Warren City Sch. Dist. Bd. of Educ., 465 U.S. 75, 81 (1984). Thus, Massachusetts supplies the substantive law to resolve this question. Under Massachusetts law, "[t]hree elements are essential for invocation of claim preclusion: (1) the identity or privity of the parties to the present and prior actions, (2) identity of the cause of action, and (3) prior final judgment on the merits." DaLuz v. Dep't of Correction, 746 N.E.2d 501, 505 (Mass. 2001).

Looking first to the identity of the parties, the state court complaint filed by Hudson named Scott Anderson and Gregory Bedard as defendants. Doc. No. 21-1 at 3. Anderson is a defendant in this action; Bedard, alleged to be a Disciplinary Hearing Officer at MCI-Shirley, is not. The present suit, in addition to Anderson, names MacEachern, Nano, Bariamis, and Brockelman as defendants. The different roster of defendants in this action, however, does not make res judicata inapplicable. "A non-party to the first action may use a judgment in that action defensively against a party who was a plaintiff in the first action on the issues which the judgment decided so long as the parties have a sufficiently close relationship." Langadinos v. Bd. of Trustees of Univ. of Mass., CIV. A. No. 12-11159-GAO, 2013 WL 5507042, at *7 (D. Mass. Sept. 30, 2013) (adopting report and recommendation of Boal, M.J.); see also TLT Const. Corp. v. A. Anthony Tappe & Assocs., Inc., 716 N.E.2d 1044, 1050 (Mass. App. Ct. 1999). Here, all defendants named in the two suits were or are officials at MCI-Shirley involved in the same nucleus of operative facts. The element of identity of parties is satisfied as to those Defendants who were not parties to the state court action.

Looking next to the identity of causes action, the state court complaint stemmed from the disciplinary actions that arose from the grievances filed by the Bridging the Gap membership. The complaint alleged violations of due process and claimed that Hudson's conduct was protected by the First Amendment. Doc. No. 21-1 at 8. That there is not perfect identity between the causes of action does not avoid the preclusive effect of res judicata. Claims not raised in a prior actions will be barred in a later action "if they arise from [] the same common nucleus of facts as the claims that were litigated." Kucharski v. Tribeca Lending Corp., 620 F. Supp. 2d 147, 150 (D. Mass. 2009). That is, res judicata bars claims that were brought in a prior proceeding as well as those that could have been brought in the earlier proceeding. Heacock v.

6

Heacock, 520 N.E.2d 151, 152-53 (Mass. 1988) (res judicata applies "even though the claimant is prepared in a second action to present different evidence or legal theories to support his claim."). Here, the allegations in both complaints stem from the officials' treatment of Hudson after Hudson and other members of the Bridging the Gap program submitted numerous grievances to prison administrators. As such, they arise from a common nucleus of facts and satisfy the claim identity requirement for res judicata purposes.

Finally, the adjudication of the state court complaint involved an adjudication on the merits. The state court granted the defendants' motion for judgment on the pleadings and entered judgment in that action. Doc. No. 21-2. There can be no dispute that the prior action resulted in a judgment on the merits. See Moniz v. Hall, CIV. A. No. 09-11645-JGD, 2011 WL 487833, at *2, *5 (D. Mass. Feb. 7, 2011) (finding state court allowance of judgment on the pleadings to be final judgment on the merits for purposes of res judicata); see also Mass. R. Civ. P. 41 (noting that any dismissal not provided for under Rule 41 "other than a dismissal for lack of jurisdiction, for improper venue, or for failure to join a party under Rule 19 . . . operates as an adjudication upon the merits.").

Accordingly, as the three requirements of res judicata are satisfied, Hudson is barred from raising his claims in this action in light of the claims he raised in the prior state court action. Thus, Defendants' Motion to Dismiss is ALLOWED as to all claims raised by Hudson.

    B.    Auguste's Claims

As Auguste was not a party to Hudson's state court action, the res judicata bar does not apply to him, and the Court proceeds to apply Defendants' arguments for dismissal to his claims. Although the exact claims advanced by Auguste are not always easy to divine, the Court

construes the pro se Complaint liberally in defining those claims raised by Plaintiff. See Erickson v. Pardus, 551 U.S. 89, 94 (2007) (per curiam).

1. **Prison Litigation Reform Act**

Defendants make two preliminary arguments anchored in the Prison Litigation Reform Act ("PLRA") that implicate all of the claims in the Complaint. First, they argue that all of Auguste's claims must be dismissed because he did not exhaust his administrative remedies as required by the PLRA. See 42 U.S.C. § 1997e(a). This contention is not amenable to resolution on the record as it stands now on a motion to dismiss. Failure to exhaust is an affirmative defense that must be pled and proved by Defendants. Jones v. Bock, 549 U.S. 199, 216 (2007). As such, a motion to dismiss may be granted on the ground of failure to exhaust only where "the facts establishing the defense [are] clear 'on the face of the plaintiff's pleadings.'" Blackstone Realty LLC v. F.D.I.C., 244 F.3d 193, 197 (1st Cir. 2001) (quoting Aldahonda-Rivera v. Parke Davis & Co., 882 F.2d 590, 592 (1st Cir. 1989)). Here, it is not clear from the face of the Complaint that Auguste did not exhaust administrative remedies as required.[2] Thus, Defendants' Motion is DENIED WITHOUT PREJUDICE on this ground.

Next, Defendants argue that the PLRA precludes recovery of monetary damages for mental or emotional injuries where there is no showing of physical injury. See 42 U.S.C. § 1997e(e). The First Circuit has not definitively ruled on the applicability of this bar to constitutional claims, or whether it applies to nominal and punitive damages in addition to compensatory damages. See Cryer v. Spencer, 934 F. Supp. 2d 323, 336 (D. Mass. 2013). Other circuits are split on the issue of whether the § 1997e(e) bar applies to constitutional claims, and

---

[2] Nor do Defendants point to other documents that establish the failure of Auguste to exhaust his remedies, let alone make the argument that any such documents are properly considered on a motion to dismiss.

other sessions in this District have found the § 1997e(e) bar not to apply to constitutional violations. Cryer, 934 F. Supp. 2d at 336-38 (discussing split and collecting cases). The First Circuit has suggested, however, that the bar does not apply to nominal and punitive damages. Kuperman v. Wrenn, 645 F.3d 69, 73 n.5 (1st Cir. 2011) (noting, in discussing the § 1997e(e) bar, that "[i]t does not matter whether compensatory damages are available to Kuperman, because his requests for nominal and punitive damages are enough to keep his claims alive."). Given the unsettled state of the law, it is sufficient for present purposes to DENY the Motion to Dismiss on this basis as Plaintiff could receive nominal, punitive, or equitable relief and that is sufficient to sustain his Complaint at this juncture.

    2.    **First Amendment Claim**

Plaintiff raises a First Amendment retaliation claim arguing that Defendants' actions—placing Plaintiff in the Special Management Unit[3] and filing a disciplinary report against him—constituted retaliation for the protected conduct of filing grievances and assisting others in filing grievances. Defendants argue that the disciplinary reports received by Plaintiffs did not violate the First Amendment because they were "based on reasonable safety and security concerns." Doc. No. 21 at 17. Defendants' argument, which focuses on the jurisprudence regarding regulations that impinge on inmates' constitutional rights, both references materials not properly before the Court on a motion to dismiss and fails to address Plaintiff's argument that the executive actions of Defendants were punishment for Plaintiff's constitutionally protected conduct.

To state a claim of First Amendment retaliation, a prisoner-plaintiff must allege "1) he engaged in constitutionally protected conduct, 2) prison officials took adverse action against him,

---

[3] The Court assumes, for Plaintiff's benefit, that the Special Management Unit is a segregated housing unit within MCI-Shirley.

3) with the intent to retaliate against him for engaging in the constitutionally protected conduct and 4) he would not have suffered the adverse action "but for" the prison officials' retaliatory motive." Schofield v. Clarke, 769 F. Supp. 2d 42, 47 (D. Mass. 2011). Here, Plaintiff has alleged protected conduct in filing a grievance,[4] Hannon v. Beard, 645 F.3d 45, 48 (1st Cir. 2011), and adverse action by placement in a segregated unit, see Cook v. Maloney, Civ. A. No. 03-12138-RWZ, 2010 WL 1381731, at *2 (D. Mass. Mar. 30, 2010), aff'd sub nom. Hannon v. Beard, 645 F.3d 45 (1st Cir. 2011). At the motion to dismiss stage, intent, in some circumstances, can be inferred from a "chronology of events which may support an inference of retaliation." Schofield, 769 F. Supp. 2d at 47. Here, Plaintiff alleges that grievances were filed, that Defendants Bariamis, Anderson, and Nano were aware of the grievances, and that Plaintiff was placed in a segregated unit and received a disciplinary report after Defendants were made aware of the grievances. These allegations are sufficient to infer retaliatory intent. See Mattei v. Dunbar, CIV. A. No. 13-12195-FDS, 2015 WL 926044, at *5 (D. Mass. Mar. 4, 2015). Finally, as to "but for" causation, although Defendants' memorandum suggests "reasonable safety and security concerns" motivated Defendants' actions, Plaintiff's allegations allow for the reasonable inference that retaliatory intent was the but for cause of those actions. No more is needed at this stage. See Mattei, 2015 WL 926044, at *5 (D. Mass. Mar. 4, 2015) ("requiring additional support . . . would impose 'a standard more stringent than called for in a pro se action.'") (quoting McDonald v. Hall, 610 F.2d 16, 18 (1st Cir. 1979)).

These allegations, however, do not involve Defendants MacEachern and Brockelman. Defendant Brockelman is not mentioned at all in relation to the grievances and subsequent

---

[4] Plaintiff also appears to argue that assisting other inmates filing grievances was protected conduct. The Court need not decide that issue because the Complaint colorably alleges that the retaliation followed Plaintiff's filing of a grievance, which is protected conduct. Hannon v. Beard, 645 F.3d 45, 48 & n.3 (1st Cir. 2011).

disciplinary action, with the exception of two wholly conclusory statements that she "conspired" and "retaliated" against Plaintiff. Defendant MacEachern, in addition to being mentioned in those conclusory statements, is alleged to have "denied" Plaintiff's appeal and "blocked . . . outside internal affairs review" of Plaintiff's retaliations claims. No further factual allegations are made. Specifically, there are no allegations that these Defendants were aware of Plaintiff's grievance or were involved in the investigation related to the grievances or the filing of the disciplinary reports. Such limited and conclusory allegations are not sufficient to plausibly state a claim of retaliation against these two defendants. See Tomaselli v. Beaulieu, 967 F. Supp. 2d 423, 445 (D. Mass. 2013) (adopting in part and rejecting in part report and recommendation of Dein, M.J.). Accordingly, the Motion to Dismiss the First Amendment retaliation claim is ALLOWED as to Defendants MacEachern and Brockelman and otherwise DENIED.

3. **Fourteenth Amendment Due Process Claim**

The Complaint appears to allege a Fourteenth Amendment due process claim arising from Plaintiff's treatment during the disciplinary process. He alleges that the violations arose from Defendants' "threats and intimidation of disciplinary action for seeking administrative redress," "falsif[ied] disciplinary allegations," and the failure to "properly investigate[]" the allegations made against Plaintiff in the disciplinary report. Doc. No. 1 ¶ 45. In order to state a claim for a procedural due process violation, a plaintiff must point to an interest in life, liberty, or property of which she has been denied. Wilkinson v. Austin, 545 U.S. 209, 221 (2005). The only deprivation alleged in the Complaint as to Auguste is that he was "placed in [the Special Management Unit] [] pending investigation for assisting prisoners with their grievance[s]." Doc. No. 1 ¶ 36. The Complaint does not allege how long Auguste remained in the Special Management Unit and it does not allege that he remains there still. Further, the Complaint does

not allege that Auguste suffered any penalty as a result of being found guilty of a disciplinary infraction. The deprivation alleged does not rise to the level of a procedural due process claim. In order for a restrictive condition of confinement imposed on a prisoner to implicate due process, the restriction must "impose[] [an] atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." Sandin v. Conner, 515 U.S. 472, 484 (1995). Without any allegation that Auguste was placed in segregation for a significant length of time or was otherwise penalized, the Complaint does not plausibly allege a deprivation implicating due process.[5] Accordingly, the Motion to Dismiss is ALLOWED as to this claim.

  4. **Conspiracy**

Plaintiff also alleges a conspiracy to violate his First Amendment rights to seek redress of his grievances. Plaintiff cites both 42 U.S.C. § 1983 and § 1985 as the basis for his claim, and both sections can create liability for conspiracies to violate civil rights. Stating a claim under either section, however, requires plausible allegations of an agreement among the conspirators to violate a plaintiff's rights (or factual allegations that allow the reasonable inference of such an agreement). See LeBaron v. Spencer, 527 F. App'x 25, 33 (1st Cir. 2013) (per curiam); Williams v. City of Boston, 771 F. Supp. 2d 190, 204 (D. Mass. 2011) (adopting report and recommendation of Dein, M.J.). Further, "allegations of conspiracy must . . . be supported by material facts, not merely conclusory statements" and such claims of conspiracy are subject to dismissal where the allegations "neither elaborate[] nor substantiate[] [the] bald claims that

---

[5] To the extent Plaintiff is raising a substantive due process claim, placing an inmate in segregated housing while investigating violations of institutional rules does not rise to the level of "shock[ing] the conscious," which is required to state a claim for a substantive due process violation. See Gonzalez-Fuentes v. Molina, 607 F.3d 864, 880 (1st Cir. 2010). The Court notes that, even where executive action involves fabricating or manipulating evidence, the conduct must independently satisfy the shock the conscious standard. See DePoutot v. Raffaelly, 424 F.3d 112, 122 n.6 (1st Cir. 2005). To the extent Plaintiff attempts to raise a substantive due process claim, the Complaint fails to state such a claim.

12

certain defendants 'conspired' with one another." Slotnick v. Garfinkle, 632 F.2d 163, 165-66 (1st Cir. 1980) (per curiam). Here, Plaintiff asserts that Defendants "conspired to deprive . . . Plaintiffs' program reforms through threats and intimidation . . . and Plaintiffs' protected conduct to inform and assist others" and that Defendant's actions "constituted a conspiracy to surpress [sic] Plaintiff's [F]irst [A]mendment rights to seek redress." Doc. No. 1 ¶¶ 42, 46. Apart from these bald assertions, the Complaint does not allege any agreement by Defendants to violate Plaintiff's rights, nor do those facts allow the reasonable inference of such an agreement. As such, the Complaint does not state a claim for conspiracy either under § 1983 or § 1985,[6] and the Motion to Dismiss is ALLOWED as to this claim.

5. **State Law Claims**

Plaintiff arguably advances state law claims, citing the Massachusetts Civil Rights Act ("MCRA"), Mass. Gen. Laws ch. 12, §§ 11H, 11I, and various sections of the Code of Massachusetts Regulations and Department of Corrections policies. To state a claim under the MCRA, a plaintiff must allege that "1) his exercise or enjoyment of rights secured by the federal or state constitutions or laws 2) has been interfered with, or attempted to be interfered with, and 3) the interference or attempted interference was by 'threats, intimidation, or coercion.'" Stone v. Caswell, 963 F. Supp. 2d 32, 37 (D. Mass. 2013) (quoting Haufler v. Zotos, 845 N.E.2d 322, 335 (Mass. 2006)). The third requirement of threats, intimidation, or coercion means that a "direct deprivation" of civil rights—one not preceded by threats, intimidation, or coercion—does not constitute a MCRA violation. Stone, 963 F. Supp. 2d at 37-38.

---

[6] The Court also notes that the claim for a conspiracy under 42 U.S.C. § 1985(3) fails independently as it does not allege that "the conduct complained of resulted from an invidiously discriminatory class-based animus." See Aulson v. Blanchard, 83 F.3d 1, 4 (1st Cir. 1996).

13

Here, the Complaint does not allege that Auguste was subject to any threats, intimidation, or coercion prior to his placement in segregation or at any other time. There are allegations that Defendant Nano told Hudson that "volumes of grievances would not be tolerated at S[h]irley and those assisting men with their complaints would be discipline[d]." Doc. No. 1 ¶ 33. While this could be read as a threat or attempt to intimidate, there are no allegations that Auguste was present for that statement, heard that statement, or was informed of that statement. Without any allegation that Auguste was subject to threats, intimidation, or coercion, the MCRA claim fails. The Motion to Dismiss will be ALLOWED on that claim.

As to the violations of the Code of Massachusetts regulations and Department of Corrections policies, plaintiffs cites violations of 103 CMR 430; 103 CMR 491.07(1), 103 DOC 473, and 103 DOC 522.07. Defendants argue that regulatory violations cannot state a claim for monetary damages unless there is a private right of action and that monetary remedies are not inferred from regulations. See Loffredo v. Ctr. for Addictive Behaviors, 689 N.E.2d 799, 803 (Mass. 1998); Martino v. Hogan, 643 N.E.2d 53, 60 (Mass. App. Ct. 1994). While Defendants are correct in this contention, Plaintiff also seeks injunctive relief, and a plaintiff can state a claim for equitable relief requiring prison officials who have violated applicable regulations to abide by those regulations. Cryer v. Massachusetts Dep't of Correction, 763 F. Supp. 2d 237, 256 (D. Mass. 2011) (adopting report and recommendation of Collings, M.J.). Accordingly, the Court examines the claimed regulatory and policy violations to determine if the Complaint states a claim for injunctive relief.

Plaintiff's citation to 103 CMR 430 cites only to a chapter of Massachusetts regulations and not to a specific section. Plaintiff claims that "the disciplinary officer improperly rubberstamped the disciplinary report allegations without adequate investigation." Doc. No. 1 ¶

39. Plaintiff fails to state a claim. Having reviewed the chapter, the only section which addresses disciplinary investigations states that, after receipt of a disciplinary report, "the Disciplinary Officer shall review the disciplinary report, or make any further investigation the Disciplinary Officer deems necessary." 103 CMR 430.10. Plaintiff did not plead any factual allegations that support a violation of the Disciplinary Officer's duty to review the report or complete any further investigation that the officer deems necessary, and therefore, Plaintiff fails to state a claim for a violation of this chapter.

Plaintiff next cites to 103 CMR 491.07. This regulation states, in relevant part, that "[e]ach institution should develop informal measures for resolving inmate complaints whereby inmates are encouraged to communicate their problem to the staff person responsible in the particular area of the problem." 103 CMR 491.07. There is no language giving rise to a duty on the part of Department of Corrections officials under this regulation, and Plaintiff has pled no factual allegations to support a violation of this regulation. Plaintiff fails to state a claim for injunctive relief for violation of this section.

Plaintiff also cites to 103 DOC 473, which is a Department of Corrections policy document regarding "inmate self improvement groups." Plaintiff alleges that Defendants "retaliate[ed] against Plaintiffs' [sic] . . . [i]n violation of . . . 103 DOC 473" and that "allegations [of misconduct by Plaintiff] were not properly investigated into by the disciplinary officer. [sic] [i]n violation of . . . 103 DOC 473." Doc. No. 1 ¶¶ 44, 45. Plaintiff's allegations have no relevance to regulation of "inmate self improvement groups" and thus the Complaint does not state a claim for injunctive relief for violation of this policy.

Finally, Plaintiff cites to 103 DOC 522.07(b)(2). 103 DOC 522.06(b)(3) states that "[u]pon receipt of an inmate complaint of staff misconduct, the Superintendent, Department

15

Head/Division Head, or his/her designee shall conduct an inquiry into the alleged misconduct and if the elements of the misconduct meet the requirements of either a Category I or Category II complaint, an Investigation Intake Form Shall be submitted to the Internal Affairs Unit." 103 DOC 522.06(b)(3). An adjacent section states that "Category II complaints" subject to Internal Affairs Unit investigation include "civil rights violations" and "[i]nfraction[s] involving discrimination, harassment and retaliation." 103 DOC 522.07(b)(2). These regulations make clear that, upon receipt of an inmate claim of staff misconduct, the superintendent shall cause an investigation intake form to be submitted to the Internal Affairs Unit if it meets the elements of a "Category I or Category II complaint," which includes claims of retaliation. Plaintiff alleges that he filed a grievance seeking outside investigation of allegedly retaliatory conduct, and that Defendant MacEachern denied his appeal of the grievance and blocked outside review, presumably by the Internal Affairs Unit. This is sufficient to state a claim for violation of 103 DOC 522.06 and 522.07 that could support equitable relief.

Thus, the Motion is ALLOWED as to all claims arising from violations of regulations and policies except that it is DENIED as to equitable relief sought for violations of 103 DOC 522.06 and 522.07 by Defendant MacEachern.

    C.    <u>Service</u>

Defendants have also moved to dismiss the Complaint as to Defendants MacEachern and Anderson pursuant to Federal Rule of Civil Procedure 12(b)(5) on the basis that Plaintiffs failed to make proper service on those Defendants. The returns of service for both these Defendants include notations that the United States Marshal's Service was unable to serve them and that these Defendants are "no longer with [the] DOC." Doc. Nos. 13, 14. Thus, there is no evidence of service as to either Defendant. The Court, however, declines to dismiss the Complaint as to

these Defendants at this time. The Court finds good cause exists to extend the time for service as Plaintiff attempted service of these Defendants with the Department of Corrections and Plaintiff is not in a position to know a present address at which to serve these Defendants. See Baez v. Connelly, 478 F. App'x 674, 676 (1st Cir. 2012) (per curiam). For this reason, the Court directs the Clerk to reissue summons for Defendants MacEachern and Anderson and Orders defense counsel to provide the last known residential address of these two Defendants, to the extent he can ascertain that information, to the United States Marshal's Service within thirty days of this Order. The Court directs the Marshal's Service effectuate service once provided this information, with all costs of service advanced by the United States. Alternatively, if these Defendants wish to retain present defense counsel to represent them in this action, counsel may make a filing with this Court within thirty days agreeing to accept service on behalf of these two Defendants. Accordingly, Defendants' Motion to Dismiss on this ground is DENIED, and Plaintiff's motions regarding service, Doc. Nos. 29, 30, 32 are ALLOWED as described above and otherwise DENIED.

D. Remaining Motions

Plaintiffs filed a Motion to Amend their Complaint, Doc. No. 34, which was opposed by Defendants, Doc. No. 38. As reflected on the Court's docket, Plaintiffs did not include a proposed amended complaint along with their Motion to Amend. The Court cannot resolve the Motion to Amend without reviewing the proposed amended complaint, and thus the Motion to Amend is DENIED WITHOUT PREJUDICE. Plaintiffs' related motions to file an affidavit in support of the Motion to Amend, Doc. No. 36, and to file another document as part of the amended complaint, Doc. No. 39, are DENIED.

Plaintiff's motion for a hearing on the Motion to Dismiss, Doc. No. 35, is DENIED.

E. Discovery Schedule

Both parties shall submit a proposed discovery schedule within thirty days of this Order. If Defendants would like the Court to address first their argument that Plaintiff failed to exhaust remedies as required by the PLRA before proceeding through general discovery, they may make such a request in their proposed schedule and include with that filing documents supporting their claim of failure to exhaust.

IV. CONCLUSION

As is set forth above, the Court DENIES Defendant's Motion to Dismiss as to Auguste's claim of First Amendment retaliation claim against Defendants Anderson, Bariamis, and Nano, as to Auguste's claim for equitable relief for violations of 103 DOC 522.06 and 522.07 against Defendant MacEachern, and as to Auguste's failure to serve Defendants Anderson and MacEachern. In all other respects, the Motion to Dismiss, Doc. No. 20, is ALLOWED. The motions related to service, Doc. Nos. 29, 30, 32, are ALLOWED to the extent set forth within and otherwise are DENIED. The remaining pending motions, Doc. Nos. 34, 35, 36, 39, are DENIED.

SO ORDERED.

    /s / Leo T. Sorokin
United States District Judge